Michael FILLER, by His Next Friend, Barbara Mitchell, and Barbara Mitchell, Plaintiffs-Appellees,

v.

RAYEX CORPORATION, a New York Corporation, Defendant-Appellant.

Nos. 18049, 18050.

United States Court of Appeals, Seventh Circuit.

Nov. 3, 1970.

William F. McNagny, J. A. Bruggeman, Robert L. Thompson, Jr., Fort Wayne, Ind., for defendant-appellant; Barrett, Barrett & McNagny, Fort Wayne, Ind., of counsel.

Robert A. Foust, Marion, Ind., David B. Keller, Edward L. Murphy, Jr., Fort Wayne, Ind., for plaintiffs-appellees; Livingston, Dildine, Haynie & Yoder, Fort Wayne, Ind., of counsel.

Before DUFFY, Senior Circuit Judge, CUMMINGS and KERNER, Circuit Judges.

CUMMINGS, Circuit Judge.

In this diversity action, Michael Filler sued to recover damages for the loss of his right eye, and his mother, Barbara Mitchell, sought to recover her expenses for his hospitalization, artificial eye, and physician's services.

When his injury occurred, Michael Filler was a 16-year-old student at Oak Hill High School, near Marion, Indiana. While he was practicing for a varsity baseball game in the late afternoon of June 10, 1966, fungoes were being lofted to him by a fellow player. Filler lost a fly ball in the sun, although he was wearing flipped-down "baseball sunglasses" manufactured by defendant. After tipping the top of his baseball glove, the ball struck the right side of the sunglasses, shattering the right lens into sharp splinters which pierced his right eye, necessitating its removal nine days later.

Filler's coach was Richard Beck, an experienced ballplayer whose first baseball season at Oak Hill was in 1965. During that season, Beck would not allow his players to use sunglasses, considering them too dangerous. However, before the 1966 season, he read the following advertisement of defendant in *Sporting News:*

"PLAY BALL!

and *Flip* for Instant Eye Protection with

RAYEX

Baseball

SUNGLASSES

Professional

FLIP-SPECS"

The advertisement also stated:

"Scientific lenses protect your eyes with a flip from sun and glare anywhere * * * baseball, beach, boat, driving, golfing, fishing, just perfect for Active and Spectator Sports— World's finest sunglasses."

After seeing this material, Beck decided to buy six pairs of defendant's flip-type baseball sunglasses for use by his outfielders and second basemen. Each pair of sunglasses was in a cardboard box labeled "Baseball Sunglasses—Professional Flip-Specs," stating "Simply flip * * * for instant eye protection." The guarantee inside each box provided:

"Rayex lenses are guaranteed for life against breakage. If lens breakage occurs mail glasses and 50¢ (Postage Handling Charge) for complete repair service.

"Rayex Sunglasses are guaranteed to:

1. Eliminate 96% of harmful ultraviolet and infrared rays.

2. Protect your eyes against reflected glare from smooth surfaces, roads, water, snow, etc.

3. Retain clear, undistorted vision."

Except for the flip feature and elastic tape at the rear of the frame, the glasses resembled ordinary sunglasses. The thinness of the lenses was shielded by the frames and therefore not obvious to users.

These glasses were stored in the glove compartment of coach Beck's car, and in accordance with the custom of his teammates, Filler removed a pair of the sunglasses from the coach's car and was using them at the time of his injury. Neither Filler, nor Beck, nor indeed even defendant's president knew the lenses would shatter into sharp splinters when hit by a baseball.

■ After a bench trial, the district judge awarded Filler $101,000 damages and his mother $1,187.75 for her consequential damages. In an unreported memorandum opinion, the district judge supported this result on three independent grounds: implied warranty, strict liability, and negligence.* Under any of

* The court reserved judgment on an express warranty count, and we also do not consider that theory.

those theories, privity between the manufacturer and plaintiff is not required by controlling Indiana law. Posey v. Clark Equipment Company, 409 F.2d 560, 563 (7th Cir. 1969); Dagley v. Armstrong Rubber Company, 344 F.2d 245, 252–254 (7th Cir. 1965); Greeno v. Clark Equipment Company, 237 F.Supp. 427 (N.D. Ind.1965).

■ We agree that defendant is liable for breach of an implied warranty of fitness for a particular purpose. Indiana has adopted the implied warranty provision of the Uniform Commercial Code dealing with fitness for a particular purpose:

> "*Implied Warranty—Fitness for particular purpose.*—Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose." Burns Indiana Stat.Ann. § 19–2–315.

These sunglasses were advertised as baseball sunglasses that would give "instant eye protection." Although they were intended for use by baseball fielders, the thickness of the lenses ranged only from 1.2 mm. to 1.5 mm., so that shattering into exceedingly sharp splinters would occur on their breaking. Since they lacked the safety features of plastic or shatterproof glass, the sunglasses were in truth not fit for baseball playing, the particular purpose for which they were sold. Therefore, breach of that implied warranty was properly found.

■ Indiana has adopted the doctrine of strict liability of sellers of products "in a defective condition unreasonably dangerous to the user," as provided in Section 402A of the Restatement of Torts Second. Posey v. Clark Equipment Company, 409 F.2d 560, 563 (7th Cir. 1969). Here the thinness of the lenses made them unreasonably dangerous to users, so that the doctrine of strict liability is applicable. However, defendant argues against strict liability, on the ground that the sunglasses were "unavoidably unsafe products" within the exception of Comment *k* to Section 402A. Even assuming *arguendo* that the state of the art is not capable of producing a shatter-resistant or splinter-free baseball sunglass as defendant claims, Comment *k* furnishes no shelter from liability in this case. The exception applies only when the product is "accompanied by proper * * * warning," which defendant's product lacked.

■ Finally, we also agree that defendant was liable for negligence. Defendant knew that these glasses shattered readily, for a hundred were returned daily for lens replacements. At least it had constructive knowledge that the impact of a baseball would shatter these lenses into sharp splinters, since it must anticipate the reasonably foreseeable risks of the use of the product. See Spruill v. Boyle-Midway, Incorporated, 308 F.2d 79, 83–85 (4th Cir. 1962); 2 Harper & James, The Law of Torts, p. 1541 (1956). Moreover, despite the obviously physical stresses to which these glasses would be put, inadequate tests were made concerning their physical properties. Accordingly, even if defendant is not liable for negligence in production and sale of a poorly constructed product, it was properly held liable for its negligent failure to warn users of the danger of its product. Indiana National Bank of Indianapolis v. De Laval Separator Co., 389 F.2d 674, 676 (7th Cir. 1968).

Judgment is affirmed.