Toomey, J.
BACKGROUND
On or about April 11, 2001, plaintiffs (hereinafter, “the landlords") filed summary process complaints against defendants (hereinafter, “the tenants”) seeking to evict, for nonpayment of rent, the tenants from premises owned by the landlords. After a number of procedural detours, the complaints were tried to the court on January 31, 2002, after which the parties were afforded until March 1, 2002, to submit memoranda in the nature of closing argument.
Based upon the evidence adduced at trial and after consideration of counsel’s post-trial submissions, this Court finds as follows.
FACTS
1. On January 7, 1999, the landlords and the tenants entered into a purchase and sales agreement with respect to a mobile home park located in *55 Winchendon, Massachusetts (hereinafter, “the premises"). The premises consisted of fifty-six trailer lots. The purchase price was $800,000.00.[3]
2. The tenants retained ownership of five trailers and, pursuant to an oral lease agreement with the landlords, those trailers were sited on five of the lots just sold to the landlords. The oral lease agreement required that the tenants pay to the landlords monthly rent in the amount of $275.00 for each lot. The tenants made the appropriate monthly rent payments up to and including June 1, 2000.
3. On June 1, 2000, the landlords raised the monthly per lot rent to $281.00. The tenants refused to pay the rent despite repeated demands by the landlord.
4. On August 7, 2000, the landlords served upon the tenants Notices To Quit for failure to pay rent.
5. On April 11, 2001, the landlords filed five summary process complaints in the Worcester Superior Court.[4]
6. On April 18, 2001, the tenants paid to the landlords the arrearages then due and have continued to pay, to the present, the monthly amounts sought by the landlords.[5]
DISCUSSION
This Court is persuaded that neither G.L.c. 186, §11 nor G.L.c. 186, §11A, upon both of which the tenants appear to rely, are pertinent to the instant dispute because both deal with a tenant’s right to cure a nonpayment of rent in the context of a “written lease." At bar, there was no evidence that the tenants’ occupancy of the lots was supported by any writing that would serve as a lease between tenant and landlord. Given the inapplicability of G.L.c. 186, §§11 and 11A and the consequent ineffectiveness of the tenants’ attempt to cureby paying arrearages on April 18,2001 and by making monthly rental payments thereafter[6]— we are left with the proposition that the law and procedures provided by G.L.c. 140 will control the instant dispute.[7]
The landlords’ claim that all of the foundations for eviction required by G.L.c. 140, §32J are satisfied at bar. That statute provides that:
If the owner [here, the tenants]... holds possession of a [trailer] site . . . without right, the licensee entitled to the . . . site may recover possession thereof by summary process.
Any tenancy . . . however created . . . may be terminated by the licensee entitled to the site ... for . . . nonpayment of rent.
G.L.c. 140, §32J. In order to pursue a summary process eviction, the landlords are required to give thirty days written notice, by certified or registered mail, to the tenants stating the reason for termination of the tenancy and informing the tenants of a right to pay the overdue rent within fifteen days of the mailing of the notice. Id. If the tenant fails to pay the overdue rent within twenty days of the receipt of said notice, the landlord may proceed to lodge the summary process complaint. Id. See also, Stavisky, Landlord and Tenant Law, 34 Mass. Prac. §1434.
In order to prevail in the summary process suit, the landlord must allege and prove:
1. the statutory reason for termination,
2. written notice by registered or certified mail,
3. a statement in the notice of reasons for termination,
4. a statement in the notice of opportunity to cure by paying arrearages, and
5. that the tenant failed to make the required payment.
Id. at §1438.
At bar, the landlords have convinced this Court, by a fair preponderance of the credible evidence, of each of the elements of the Landlords’ case for eviction by reason of nonpayment of rent. The reason for terminationto wit, nonpayment of rentis grounded in statute. See G.L.c. 140, §32J. The four pertinent written notices to quit were duly served upon the tenants on August 7, 2000. The notices recited that “The reason for this notice is non-payment of rent.” The notices asserted that, “You are advised that you may stop the eviction by paying the full amount of rent you owe on or before the fifteenth day from receipt of this notice.” The evidence at trial established that the tenants failed to tender the amounts due until April 18,2001, and that payments made thereafter, concededly in a timely fashion, constituted use and occupancy fees in contradistinction to rent tenders.
Tenants oppose the landlords’ claim for possession by asserting that the landlords violated G.L.c. 140, §32 (disclosure of park rules) and 940 CMR 10.03(4) (requiring landlords to make a good faith effort to favor tenants with a fixed term occupancy agreement). Tenants also maintain that, by failing to offer them a lease, landlords effectively blocked tenants from their right to cure on or before their Answers to the summary process complaints at bar were due. G.L.c. 186, §11A (providing for such cure in the context of a written leasehold). None of tenants’ suggestions are compelling.
This Court finds nothing in the law that would require the defeat of a summary process eviction suit merely because the landlords omitted to provide notice of the mobile home park rules or failed to present the tenants with a written lease for lots upon the park premises. To require such a harsh result in the circumstances at bar, wherein the tenants were the immediate predecessor-owners of the park.premises, would surely elevate form over substance.[8] Also, to assert, as do the tenants, that, had landlords offered them a written lease, they would have had an oppor *56 tunity to cure at the time of their Answer, is patently without merit. First, there is no evidence that tenants would have entered into such a written contract with landlords; second, tenants had chosen not to cure upon the service of the notices to quit (upon which the right to cure was plainly recited); and third, the implication that tenants were ready, willing and able to cure at the time of their Answer is wholly speculative and belied by their conduct throughout their tenancy.[9] In sum, none of the “defenses” advanced by tenants constitutes an impediment to landlords’ entitlement to the eviction of tenants. The landlords’ hands are not “unclean” and equity will recognize the merit of their complaints.
CONCLUSION
Judgment shall issue for the plaintiffs (Landlords) on each of the four summary process complaints. SO ORDERED.

The circumstances of the sale preságed the subsequent uneven road of the tenancy. When the tenants were reluctant to close in accordance with the purchase and sale agreement, the landlords brought suit seeking specific performance, of the contract. See W.S.C. No. 2000-01076. The tenants failed to answer or defend and, on January 3, 2001, were defaulted.
On June 25, 2001, in an effort to resolve the matter, the parties appeared before Donohue, J. and entered into an “interim agreement” by which the ends of the purchase and sale agreement might be realized. The tenants failed to comply with the “interim agreement.”
On January 31, 2002, this Court denied the tenants’ motion to vacate the default judgment (leaving intact the order of specific performance) and took no action on the pending motion for contempt of the interim agreement (leaving intact the tenants’ obligation to convey the premises to the landlords).

Each of the complaints pertained to a trailer owned by the tenants, but located on a lot owned by the landlords and leased by the tenants. At the time of trial, however, one of the trailers (occupying the 28 North Road lot) was sold by the tenants; only the four remaining trailers are implicated in the instant proceeding.

A11 payments thus made were conveyed and received for “use and occupancy” by the tenants and not as rental payments pursuant to the original oral lease agreement. By letter dated April 27, 2001, counsel for the landlords informed counsel for the tenants that, ‘The Caplises are accepting the rent that was offered by Mr. Richard for use and occupancy only and do not waive any rights under their notice. Please see Slater v. Krinsky, 414 N.E.2d 983.”

We shall deal Infra with tenants’ contention that the monthly payments were “rental payments” and thus a defense to the landlords’ claim for eviction by reason of nonpayment of rent.

The caption of G.L.c. 140, §§32A-32S suggests that the cited statutes are applicable to, inter alia, “Mobile Home Parks.” The premises at bar indisputably fit that appellation.

The Court does not intend this observation to suggest that adequate evidence of the landlords’ omissions or failure ■ was adduced at trial. The point here is that, assuming such omissions or failure arguendo, equity does not support, in the circumstances, a defense to eviction.

Tenants’ payments on or about April 18, 2001 and thereafter, which payments satisfied arrearages and brought tenants current on their obligations to landlords do not serve either as a cine for their non-payment or as evidence of an intent to cure at Answer. This Court has concluded, see fn. 5, supra, that all payments after the August 7, 2000, notices to quit were for use and occupancy only. That is, landlords’ acceptance of the amounts due did not serve to revive the lease and cannot now be painted as rental payments made pursuant to the lease.